# IN THE SUPREME COURT OF CALIFORNIA

TESORO REFINING & MARKETING COMPANY LLC et al.,
Plaintiffs and Appellants,

v.

CITY OF CARSON,
Defendant and Respondent.

S289952

Second Appellate District, Division Four
B335686

Los Angeles County Superior Court
23STCV14351

August 10, 2026

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Evans, and Grover* concurred.

---

*      Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

TESORO REFINING & MARKETING COMPANY LLC v.
CITY OF CARSON

S289952


Opinion of the Court by Guerrero, C. J.


The Government Claims Act (GCA; Gov. Code, § 810 et seq.)[1] establishes a standardized procedure for bringing "all claims for money or damages against local public entities." (§ 905.) In *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 619–629 (*McWilliams*), we held that the GCA applies to claims for tax refunds against local government entities. This case requires us to decide whether a local government entity may require a person seeking a tax refund to first comply with a local administrative review procedure before submitting a claim to the government entity pursuant to the GCA.

We conclude that a local government entity cannot, consistent with the GCA, require a person to comply with such a procedure as a precondition to submitting a tax refund claim. A local law that conflicts with state law is preempted and may not be enforced. (*Chevron U.S.A. Inc. v. County of Monterey* (2023) 15 Cal.5th 135, 142 (*Chevron U.S.A.*).) A conflict arises where the Legislature intends state law to occupy the entire field on a certain subject, and the local law regulates in the area occupied by state law. (See *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1068 (*O'Connell*).) The history, text and structure of the GCA — as well as this court's own precedents —

---

[1] Undesignated statutory references are to the Government Code.

establish that the Legislature intended the GCA to occupy the
entire field concerning presentation requirements for money
and damages claims against local government entities. (See
*Volkswagen Pacific, Inc. v. City of Los Angeles* (1972) 7 Cal.3d
48, 62, fn. 7 (*Volkswagen Pacific*) ["the filing of claims for money
or damages against California government units is an area of
statewide concern in which the Legislature has occupied the
entire field"].)

Here, the City of Carson (City) adopted mandatory
administrative review procedures for persons seeking a refund
of the City's oil industry business license tax. Section 63515 of
the Carson Municipal Code[2] requires a person seeking a refund
to file a written "request" with the City's finance director.
Section 63523 permits the taxpayer, if dissatisfied with the
finance director's decision, to file an appeal with the city
manager. This procedure — filing a refund request and
subsequent appeal with the City for its consideration — is
simply a way to present a claim which differs from that specified
in the GCA. Because sections 63515 and 63523 of the Municipal
Code impose presentation requirements on persons seeking a
tax refund beyond those established by the GCA, they encroach
upon the field occupied and are therefore preempted.

This conclusion is consistent with the specific history and
purposes of the GCA. In enacting the GCA, the Legislature
sought to address the "conflicting" requirements among public
entities throughout the state for presenting claims for damages
or other monetary demands. (*DiCampli-Mintz v. County of*

---

[2] All citations to the Municipal Code are to the City of
Carson Municipal Code.

*Santa Clara* (2012) 55 Cal.4th 983, 993.) Requiring a taxpayer to exhaust local administrative review procedures in addition to the GCA's procedures would frustrate the Legislature's primary purpose in enacting "uniform procedures" for the presentation of such claims. (*DiCampli-Mintz*, at p. 993.)

In this case, Tesoro Refining & Marketing Company LLC and Tesoro Logistics Operations LLC (collectively, Tesoro) filed a lawsuit for recovery of taxes paid after filing an unsuccessful claim with the City pursuant to the GCA. The City successfully demurred to Tesoro's complaint on the ground that Tesoro failed to exhaust the City's administrative review procedures. The Court of Appeal affirmed, rejecting Tesoro's argument that the GCA preempted the review procedures. Because this holding was in error, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Tax Assessment and Tesoro's Claim for a Refund

In 2017, voters in the City approved an ordinance known as the Oil Industry Business License Tax (the Ordinance), codified in article VI, chapter 3.5 of the City's Municipal Code. (See Mun. Code, §§ 63501–63526.) The Ordinance requires all persons engaged "in the business of operating an oil refinery or facility that stores petroleum products" to pay a quarterly "business license tax" equaling "one-quarter (1/4) percent of gross receipts of any such business conducted within the City." (Mun. Code, § 63505.) The Ordinance also establishes a procedure for taxpayers to request a refund, under which the taxpayer must file a request with the City's finance director. (Mun. Code, § 63515.) If unsatisfied with the result, the

3

taxpayer may appeal the director's decision to the city manager.
(*Id.*, § 63523.)

Tesoro operates an oil refinery within the City's
jurisdiction. Following an audit, the City determined that
Tesoro had underpaid its business license tax for the period of
December 2017 through June 2018 and issued a notice of tax
deficiency. Tesoro elected to pay the assessed deficiency under
protest. It then filed a claim with the City clerk for a refund of
the deficiency payment. Tesoro contended that the City was
barred from seeking the payment because it issued the notice of
tax deficiency after the limitations period for an action to
recover taxes had expired. Tesoro also contended that the City
used an unlawful methodology to determine the proportion of
"business conducted within the City" for purposes of calculating
the license tax. (Mun. Code, § 63505.) To file its claim, Tesoro
used the City's approved form for filing claims under the GCA.
The City denied the claim.

### B. The Underlying Action

Tesoro filed this lawsuit, seeking a refund of its additional
payment to the City. The City demurred. It argued that the
action was barred because Tesoro had failed to exhaust the
administrative remedies provided in the Ordinance, including
requesting a refund from the City's finance director and
appealing any decision to the city manager, before filing a claim
under the GCA. In its opposition, Tesoro argued that it was not
required to exhaust these administrative remedies. It
maintained that the GCA occupies the field of presentation
procedures for damages claims against local public entities, and
that the GCA therefore preempts the Ordinance's
administrative refund procedures.

The trial court sustained the City's demurrer. The court agreed with Tesoro that its claim for a tax refund was a claim for money or damages within the meaning of the GCA, but it disagreed that the GCA preempted the City's administrative refund procedures. Citing *Richards v. Department of Alcoholic Beverage Control* (2006) 139 Cal.App.4th 304 (*Richards*), the court ruled that "[t]he presentation of a claim pursuant to the GCA is a separate, additional prerequisite to commencing an action against the state or a local public entity and is not a substitute for the exhaustion of an administrative remedy."

Tesoro appealed, and the Court of Appeal affirmed. The court held that Tesoro failed to meet its burden to show that the GCA preempted the City's administrative refund procedures. In the court's view, Tesoro did not demonstrate that "the Legislature sought to fully occupy the field of prescribing the procedures a taxpayer must follow before suing for refund of local tax." (*Tesoro Refining & Marketing Co. LLC v. City of Carson* (Feb. 28, 2025, B335686) [nonpub. opn.].) The court further held that Tesoro forfeited its alternative argument that several specific provisions of the Ordinance were preempted because they contradicted the GCA. We granted review to decide whether a claimant for a local government tax refund may be required to comply with a local administrative review procedure before filing a claim under the GCA, or whether the GCA preempts such a requirement under the doctrine of field preemption.

## II. DISCUSSION

Tesoro contends the Ordinance's administrative refund procedures are preempted by the GCA. The City appears to concede that the GCA "preempts the field of claiming

5

requirements" for money and damages claims, but disagrees that the preempted field extends to the administrative refund procedures at issue. We conclude that the GCA occupies the field of presentation requirements for claims for money or damages against local public entities, and that the Ordinance's administrative review procedures — specifically those established in sections 63515 and 63523 of the Municipal Code — impose additional requirements for the presentation of such a claim. Thus, the Ordinance's additional requirements are preempted.

## A. State and Local Claims Procedures

### 1. *The Government Claims Act*

" 'From the earliest days of California legal history, a variety of statutes, municipal charter provisions, and local ordinances . . . required claims to be presented to public officers as a condition to maintaining an action against public entities.' " (*Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 120 (*Minsky*).) Compliance with the applicable "claim statute" was generally considered "an essential requisite to [a] plaintiff's cause of action," without which the plaintiff was barred from recovery. (*Farrell v. County of Placer* (1944) 23 Cal.2d 624, 630; see *Norton v. City of Pomona* (1935) 5 Cal.2d 54, 65–66; *Farmers etc. Bank v. City of Los Angeles* (1907) 151 Cal. 655, 657–658.) In 1956, the Legislature adopted a resolution finding that the existing provisions of law were "extremely varied in their procedural requirements," and "so overlapping and inconsistent that it [was] frequently difficult to ascertain which of the different provisions controls in a particular case." (Assem. Conc. Res. No. 12, Stats. 1956 (1956 Reg. Sess.) res. ch. 35, pp. 256–257.) In light of these findings, the Legislature directed the

California Law Revision Commission to make a
recommendation regarding whether such claim presentation
requirements "should be made uniform." (*Id*. at p. 257.)

The Law Revision Commission presented its report and
recommendations to the Legislature in 1959. (Recommendation
and Study Relating to The Presentation of Claims Against
Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep.
(1959) (1959 Law Revision Commission Report).) According to
the commission, there existed "at least 174 separate claims
provisions" in the state "scattered through statutes, charters,
ordinances and regulations." (*Id*. at p. A-7.) The commission
found that these claims provisions were "unduly complex,
inconsistent, ambiguous and difficult to find," contributed to
unnecessary litigation, and "often result[ed] in the barring of
just claims." (*Ibid*.) Accordingly, the commission drafted and
recommended the Legislature enact a general claims statute
that "would govern the presentation of most claims for money or
damages against governmental entities in this State." (*Id*. at
p. A-8.) The Legislature enacted the commission's
recommended claims statute that year. (Stats. 1959, chs. 1724–
1726; see former §§ 700–730.) Four years later, the Legislature
unified the statutes governing claims against local public
entities with those governing claims against the state and its
officers and employees. (Stats. 1963, ch. 1715; see
Recommendation Relating to Sovereign Immunity: Number 2-
Claims, Actions and Judgments Against Public Entities and
Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep.
(1963).)

The collective claims statutes are now codified in the GCA.
(See §§ 810–998.3.) As we have explained, the GCA "is a

comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.) The presentation requirements for claims are set forth in part 3 of the GCA. (§§ 900–935.9.) Section 905 states: "There shall be presented in accordance with [the GCA's provisions] all claims for money or damages against local public entities," except certain categories of claims specifically enumerated. Generally, a person may not bring a suit for money or damages against a government entity until he or she presents a claim in the manner required by the GCA, and the claim either "has been acted upon" by the government entity "or has been deemed to have been rejected." (§ 945.4; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.)

Section 910 sets forth the required contents of the claim. The claim must include the claimant's name, address, and the address for service (§ 910, subds. (a)–(b)); "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim" (*id.*, subd. (c)); "[a] general description of the indebtedness, obligation, injury, damage or loss incurred" (*id.*, subd. (d)); the names of the public employees causing the injury, damage, or loss (*id.*, subd. (e)); and the amount claimed, if less than $10,000 (*id.*, subd. (f)). The local government entity must also supply forms for claimants to use that specify the required information. (§ 910.4.)

Section 915 prescribes how the claimant presents the claim to the local government entity. The claimant may submit the claim by one of the following means: "[d]elivering it to the clerk, secretary, or auditor thereof" (§ 915, subd. (a)(1)); "[m]ailing it to the clerk, secretary, auditor, or to the governing

body at its principal office" (*id.*, subd. (a)(2)); or transmitting it electronically in the manner specified, if authorized by an ordinance or resolution of the public entity (*id.*, subd. (a)(3)). The claimant is deemed to have complied with section 915's requirements if the claim is "actually received by the clerk, secretary, auditor, or [governing body] of the local public entity." (*Id.*, subd. (e)(1); see § 900.2, subd. (a).)

Finally, the GCA imposes strict deadlines on claimants and local public entities. With few exceptions, the claimant generally must present the claim within one year of the "accrual of the cause of action" to which the claim relates. (§ 911.2, subd. (a).) After the claimant presents the claim, the local government entity "shall act on a claim . . . within 45 days" (§ 912.4, subd. (a)) in one of the following ways: rejecting the claim, allowing the claim in full, allowing the claim in part and rejecting it in part, or compromising the claim (see § 912.6, subd. (a)(1)–(4)). The claimant and local government entity may extend the deadline to act by written agreement. (§ 912.4, subd. (b).) If the entity does not act on the claim within 45 days or within the time prescribed by agreement, "the claim shall be deemed to have been rejected." (*Id.*, subd. (c).) A person must file suit within six months after the government entity provides notice of its decision on the claim or, if no notice is provided, within two years of the accrual of the cause of action. (§ 945.6, subd. (a).)

### 2. *The Ordinance*

As noted, the Ordinance requires all persons engaged in the business of operating an oil refinery or facility that stores petroleum products to pay a quarterly tax based on the gross receipts of such business conducted within the City. (Mun.

Code, § 63505.)  The taxpayer must "submit a tax return each calendar quarter" that "include[s] sufficient information, including gross receipts information, to allow computation of the tax due."  (*Id.*, § 63507, subd. A.)  The taxpayer must also maintain records from the prior four years as necessary to determine the tax due.  (*Id.*, § 63516.)  The City's finance director may audit the taxpayer for compliance.  If, following an audit, the finance director determines that the taxpayer has underpaid the tax, the finance director notifies the taxpayer of the balance due, and the taxpayer must pay the balance within 30 days.  (*Ibid.*)

The Ordinance includes mandatory procedures for refund requests.  Under the Ordinance, "[n]o refund shall be made unless a request is received in writing by the Director within one (1) year of the payment of the tax, interest or penalty to be refunded." (Mun. Code, § 63515.)  The Ordinance does not set a deadline by which the finance director must act on a refund request.

The Ordinance provides that a taxpayer "may appeal any decision of the Director made under [the Ordinance] to the City Manager within fifteen (15) days of the decision."  (Mun. Code, § 63523, subd. A.)  Within 60 days of the filing of the appeal, the city manager "shall allow an opportunity for submission of argument and evidence in writing or orally and then determine whether and to what extent to grant or deny the appeal."  (*Id.*, § 63523, subd. C.)  The city manager's decision on appeal "shall be final as to the City."  (*Ibid.*)  A taxpayer unsatisfied with the decision may then seek a writ of administrative mandate under Code of Civil Procedure section 1094.5.  (Mun. Code, § 63523, subd. C.)

## B. General Principles Governing State Preemption of Local Laws

Article XI, section 7 of the California Constitution authorizes a city or county to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." However, if an otherwise valid local law " ' "conflicts with state law, it is preempted by such law and is void." ' " (*Chevron U.S.A.*, *supra*, 15 Cal.5th at p. 142.)

We have "identified three ways in which a preempting conflict may arise: ' "if the local legislation ' "[1] duplicates, [2] contradicts, or [3] enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' " (*Chevron U.S.A.*, *supra*, 15 Cal.5th at p. 142.) "Local legislation is 'duplicative' of general law when it is coextensive therewith." (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 (*Sherwin-Williams*).) "[L]ocal legislation is 'contradictory' to general law when it is inimical thereto. [Citation.] [¶] Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so . . . ." (*Id.* at p. 898.)

We are concerned here with preemption based on a legislative intent to fully occupy a certain field. " ' "Where the Legislature has adopted statutes governing a particular subject matter," ' " we look both to the language of the statutes as well as the " ' "purpose and scope of the legislative scheme" ' " to determine whether the Legislature intended to occupy the field. (*O'Connell*, *supra*, 41 Cal.4th at p. 1068.) Indicia of the Legislature's intent include that " '(1) the subject matter has

been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality." (*Sherwin-Williams*, *supra*, 4 Cal.4th at p. 898.)

For example, in *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1252 (*American Financial Services*), we held that division 1.7 (then-division 1.6) of the Financial Code (Fin. Code, §§ 4970–4979.8), which regulates lending practices that typically occur in the subprime mortgage market, preempted a local ordinance that regulated predatory lending practices for home mortgages. (*American Financial Services*, at pp. 1244–1250.) We explained that division 1.7 evinces "clear indications of the Legislature's implicit intent to fully occupy the field of regulation of predatory lending tactics in home mortgages." (*American Financial Services*, at p. 1252.) The statutes "comprehensively regulate[]" such practices by "delineat[ing] at length what mortgages are covered, what lending acts are prohibited, who can be held liable . . . , the various enforcement mechanisms available, who may invoke such enforcement mechanisms, and defenses to such violations." (*Id.* at p. 1254.) We also found relevant that the regulation of mortgage lending " 'require[d] uniform treatment throughout the state,' " explaining that home loan securities were sold both statewide and nationally, and that commercial realities would

therefore confound local governments' efforts to impose inconsistent regulations. (*Id.* at p. 1256.) Because the local ordinance at issue attempted to regulate predatory lending practices for the same mortgages governed by division 1.7 of the Financial Code, the ordinance encroached upon the field occupied by state law and was preempted. (*American Financial Services*, at pp. 1256–1257.)

In *O'Connell*, we held that the California Uniform Controlled Substances Act (UCSA; Health & Saf. Code, § 11000 et seq.), which regulates the possession, use and distribution of specific controlled substances, preempted a local ordinance that authorized the forfeiture of any vehicle used to acquire or attempt to acquire a controlled substance. (*O'Connell*, *supra*, 41 Cal.4th at pp. 1069–1071.) We explained that the USCA "defines controlled substances, regulates their use, and sets penalties for their unlawful possession and distribution." (*O'Connell*, at p. 1071.) These penalties included vehicle forfeiture upon proof beyond a reasonable doubt that the vehicle was used to facilitate specific, enumerated crimes. (*Ibid.*) "The comprehensive nature of the UCSA in defining drug crimes and specifying penalties" was "so thorough and detailed as to manifest the Legislature's intent to preclude local regulation." (*Ibid.*) Because the local ordinance authorized vehicle forfeiture under different circumstances than those prescribed in the UCSA, the ordinance was preempted.

As our precedents make clear, "[f]ield preemption generally exists where the Legislature has comprehensively regulated in an area," indicating its intent to leave "no room for additional local action." (*T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1122 (*T-Mobile West*).)

"The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149.)

## C. The GCA Occupies the Field of Presentation Requirements for Money or Damages Claims

In considering the preemptive effect of the GCA, we are not working with a blank canvas. We have previously held that the GCA preempts a local government entity's claims procedures, including those governing claims for a tax refund. (*Volkswagen Pacific*, *supra*, 7 Cal.3d at pp. 62–63, fn. 7.) In *Volkswagen Pacific*, the plaintiff brought an action against a city for the refund of a business license tax, like Tesoro did here. (*Id.* at p. 51.) The city's charter required a taxpayer to present a claim to the city's board before suing for a tax refund, and it allowed the board up to 90 days to act upon receiving the claim. (*Id.* at pp. 62, fn. 7, 63.) By contrast, sections 912.4 and 935, subdivision (d), of the GCA require a local government to act within 45 days of receiving a claim for money or damages, as discussed above. (See *Volkswagen Pacific*, at p. 62, fn. 7.) Describing the plaintiff's claim as a "claim for money in the form of a tax refund," we held that the GCA's deadlines applied, and that the charter provision allowing the board additional time to act on a tax refund claim was therefore preempted. (*Volkswagen Pacific*, at p. 61; see *id.* at p. 62 & fn. 7.) In so doing, we explained that "the filing of claims for money or damages against California government units is an area of statewide concern in which the Legislature has *occupied the entire field*." (*Id.* at p. 62, fn. 7, italics added.)

14

Our holding in *Volkswagen Pacific* is consistent with the
text and purposes of the GCA.  The requirements for presenting
damages claims to local public entities are " 'so fully and
completely covered' " by the GCA as to clearly indicate such
requirements are exclusively a matter of state concern; or at
least, the requirements are " 'partially covered . . . [and] couched
in such terms' " as to clearly indicate that the Legislature " 'will
not tolerate further or additional local action.' "  (*Sherwin-
Williams*, *supra*, 4 Cal.4th at p. 898.)  The procedures mandated
by the GCA expressly state that they apply to "*all* claims for
money or damages against local public entities," unless an
exception applies.  (§ 905, italics added.)  A " '[l]ocal public
entity' " includes any "county, city, district, public authority,
public agency, and any other political subdivision or public
corporation in the State."  (§ 900.4.)

Moreover,    the    GCA's    prescribed    procedures    are
themselves comprehensive.  They establish the who, what,
when, how, and to whom of filing such claims for damages.  The
GCA describes who must present the claim (the claimant or
their representative) (§§ 910, 910.2), when the claimant must
submit the claim (§ 911.2), which form the claimant uses
(§ 910.4), what information the claimant provides (§ 910), which
government official the claimant submits the claim to (§ 915),
how the claimant delivers the claim to the local government
entity (*ibid*.), and when, after submitting the claim, the
claimant must file a related cause of action (§ 945.6, subd. (a)).
Similarly, the GCA prescribes how and when the local public
entity must rule on a claim for damages.  (§ 912.4.)

The interaction between sections 905 and 935 also evinces
the Legislature's intent to occupy the field of claim presentation

requirements. Section 905 specifically enumerates several types of claims against local public entities to which the GCA's general presentation requirements do *not* apply. (§ 905, subds. (a)–(p).) Section 935, subdivision (a) then states that those claims excepted by section 905 and "not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance, or regulation adopted by the local public entity." The statute's general application to *all* types of money and damages claims, other than a specifically identified subset for which local governments may enact their own procedures, reflects the Legislature's intent to preclude local regulation for those claims not included in the subset. Like the statutory schemes at issue in *American Financial Services* and *O'Connell*, the GCA's provisions are " 'extensive in their scope' " and " 'clearly show an intention by the Legislature to adopt a general scheme for the regulation' " of the covered subject matter (*American Financial Services*, *supra*, 34 Cal.4th at p. 1254; see *id*. at pp. 1254–1255). They are sufficiently comprehensive to demonstrate the Legislature's intent to leave "no room for additional local action" in the field of claims presentation requirements. (*T-Mobile West*, *supra*, 6 Cal.5th at p. 1122.)

When the Legislature enacted the GCA, it also adopted a complementary constitutional amendment to ensure that the claims provisions would apply to chartered cities, like the City of Carson. (Assem. Const. Amend No. 16, Stats. 1959 (1959 Reg. Sess.) res. ch. 231, p. 5801.) The voters subsequently approved the amendment. (Cal. Const., art. XI, former § 10, as adopted Nov. 8, 1960.) As adopted, the amendment provided: "No provision of this article shall limit the power of the Legislature

to prescribe procedures governing the presentation, consideration and enforcement of claims against chartered counties, chartered cities and counties, and chartered cities, or against officers, agents and employees thereof." (Cal. Const., art. XI, former § 10, as adopted Nov. 8, 1960.) This amendment confirms the GCA's comprehensive scope, including as to charter cities. Former section 10 of article XI has since been amended and renumbered as section 12, which now provides: "The Legislature may prescribe procedure for presentation, consideration, and enforcement of claims against counties, cities, their officers, agents, or employees." However, as we explained in *McWilliams*, *supra*, 56 Cal.4th at page 627, "the deletion of the reference to chartered cities, chartered counties, and chartered cities and counties was not intended to change the scope of the Legislature's power with respect to chartered entities."

Moreover, even if the GCA's procedures could be viewed as less than exhaustive, the legislative history confirms that the Legislature viewed the presentation requirements for damages claims against local public entities as requiring " 'uniform treatment throughout the state.' " (*American Financial Services*, *supra*, 34 Cal.4th at p. 1256.) As discussed, when the Assembly directed the Law Revision Commission to make a recommendation on statutory claims procedures, the Assembly noted that existing procedures adopted by local public entities, "including cities and districts," were "extremely varied" as to "the periods within which various claims shall be filed," "the contents of the claim," and "the person with whom it shall be filed." (Assem. Conc. Res. No. 12, Stats. 1956, *supra*, res. ch. 35, at pp. 256–257.) The Assembly expressed concern that this

"lack of uniformity" had caused persons having valid claims to fail to comply with a technical requirement and lose their rights. (*Id*. at p. 257.)  Thus, the Assembly concluded that it would "be in the public interest to have these varying claims statutes, which have been characterized by the Supreme Court as 'traps for the unwary' (Stewart v. McCollister, 37 Cal.2d 203, 207) . . . made as *uniform* as possible."  (*Ibid*., italics added.)

In its recommendations to the Legislature, the commission expressed the same concern for the uniform treatment of presentation requirements for damages claims against local public entities.  The commission noted the disparities in procedural requirements identified by the Legislature, as well as others.  (1959 Law Revision Com. Rep., *supra*, at p. A-8 [describing differences among "the types of claims which are subject to presentation requirements, the time limits for presenting claims, the official to whom claims must be presented, the information which the claimant must furnish, the requirements of verification and signature, the time allowed for consideration of the claim by the governmental entity and the time allowed for commencing an action after a claim is rejected"].)  Thus, the commission proposed to the Legislature a "single statutory enactment" setting forth a procedure "applicable to claims [for money or damages] against all forms of governmental agencies below the State level."  (*Id*. at p. A-116.)  The Legislature's decision to adopt the commission's recommendations confirms that it shared the view when it ultimately enacted the GCA.  (See *Estate of Joseph* (1998) 17 Cal.4th 203, 216 ["we give 'substantial weight' to the commission's understanding of a provision it proposed"]; *In re Marriage of Buol* (1985) 39 Cal.3d 751, 761 [commission's report

"elucidate[s] the reasoning" of the Legislature in enacting the
statute].)  Indeed, the Office of Legislative Counsel's report on
Assembly Bill No. 405 (1959 Reg. Sess.) — the bill that
introduced the GCA's claims provisions — specifically referred
to the commission's 1959 report and explained that the bill was
one of several recommended by the commission "relating to
claims against public entities and having as a principal purpose
the creation of a greater degree of uniformity in the law in this
field."  (Legis. Counsel, Rep. on Assem. Bill No. 405 (1959 Reg.
Sess.) p. 2.)  The express statements from both the Legislature
and the commission, coupled with the extensive procedures
enacted by the Legislature, reveal that the Legislature viewed
the requirements for presenting money and damages claims
against local government entities as a matter of statewide
concern, for which it would tolerate no additional local
requirements.

### D. The GCA Preempts the Ordinance's Refund Procedures

The City does not directly dispute whether the GCA
occupies the field of presentation requirements for claims
against local public entities.  Its primary argument is that the
Ordinance's administrative refund procedures do not involve a
claim for purposes of the GCA and therefore fall outside the
GCA's preemptive scope.  To determine whether the GCA
impliedly preempts the administrative refund procedures at
issue here, we first determine the precise field the Legislature
intended to occupy.  (*Candid Enterprises, Inc. v. Grossmont
Union High School Dist.* (1985) 39 Cal.3d 878, 886, fn. 4; *In re
Hubbard* (1964) 62 Cal.2d 119, 125; *People v. Nguyen* (2014)
222 Cal.App.4th 1168, 1177–1178.)  We then consider the

subject matter of the local ordinance. If the local ordinance imposes additional requirements, or supplements, complements, or otherwise seeks to regulate within the field occupied, it is preempted. (*O'Connell, supra*, 41 Cal.4th at p. 1068; *American Financial Services, supra*, 34 Cal.4th at p. 1252; *Lancaster v. Municipal Court* (1972) 6 Cal.3d 805, 807–808.)

As discussed, the text and legislative history accompanying the GCA reveal that the field preempted is the presentation requirements for claims for money or damage against local public entities. (See § 905 ["There shall be *presented*" in accordance with the GCA's provisions "all claims for money or damages against local public entities," unless specifically excepted (italics added)]; Code Civ. Proc., § 313 ["the *presentation* of claims as a prerequisite to commencement of actions for money or damages against the State of California, counties, cities, cities and counties, districts, local authorities, and other political subdivisions of the State, and against the officers, employees, and servants thereof, is prescribed" by the GCA (italics added)].) The question is therefore whether the City's administrative review procedures seek to impose additional requirements for the presentation of a claim for money or damages, or otherwise regulate the subject area.

The GCA does not define a "claim." However, the meaning of a claim can be gleaned from its use within the statutory scheme. When the Legislature enacted the GCA, a claim was generally understood as the " 'assertion of an existing right.' " (*Supera v. Moreland Sales Corp.* (1938) 28 Cal.App.2d 517, 521, italics omitted; see *Mellus v. Potter* (1928) 91 Cal.App. 700, 704.) The text of the GCA confirms this understanding. The GCA

requires the claimant to include certain information describing the nature of the claim, including the date, place, and circumstances of the occurrence or transaction which give rise to the claim, and a "general description of the indebtedness, obligation, injury, damage or loss incurred." (§ 910, subd. (d).) The GCA also makes clear that a claim is inextricably tied to a related cause of action. The claim must be presented to the local government entity within either six months or one year of the "accrual of the cause of action." (§ 911.2, subd. (a).) This date of accrual, in turn, is defined as the date the cause of action would accrue for purposes of an otherwise applicable statute of limitations "if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced." (§ 901.) Thus, a claim under the GCA encompasses the assertion of an underlying substantive right, which is independent from — and unaffected by — whatever presentation requirements the public entity seeks to impose.

The 1959 Law Revision Commission Report confirms this broad understanding of a claim. In the opening paragraph of its recommendation, the commission explained: "The law of this State contains many statutes and county and city charters and ordinances which bar suit against a governmental entity for money or damages unless a written statement or 'claim' setting forth the nature of the right asserted against the entity, the circumstances giving rise thereto and the amount involved is communicated to the entity within a relatively short time after the claimant's cause of action has accrued. Such provisions are referred to in this Recommendation and Study as 'claims statutes.'" (1959 Law Revision Com. Rep., *supra*, at p. A-7.)

Similarly, in its survey of the 174 claims statutes across the state, the commission noted that some local government entities had used the term "demand[]" rather than "claim" to describe the prelawsuit presentation requirement. (1959 Law Revision Com. Rep., *supra*, at pp. A-24 to A-28, A-57 to A-60.) In discussing one city charter that used both terms, the commission explained: "If the framers of these provisions were observing a distinction between 'demands' and 'claims,' it is not apparent what the difference is." (*Id.* at p. A-60.)

The claims subject to the GCA are those for "money or damages." (§ 905.) Damages have long been defined in this state as compensation "in money" for detriment caused by the unlawful act or omission of another. (Civ. Code, § 3281; see *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 825 [explaining that Civ. Code, § 3281 is intended to capture "the plain and ordinary meaning of the word"]; *Wainscott v. Occidental etc. Assn.* (1893) 98 Cal. 253, 255 [term " 'damages' signifies a compensation in money for a loss or damage"]; Black's Law Dict. (4th ed. 1951) p. 466, col. 2 [defining "damages" as "[a] pecuniary compensation or indemnity"].) The text of the GCA confirms this understanding. The claimant must state in its claim either the amount demanded or whether the claim would be a limited civil case. (Gov. Code, § 910, subd. (f).) The local government entity then acts by either "allow[ing]" or "reject[ing]" all or part of the claim, i.e., paying or rejecting the demand. (*Id.*, § 912.6, subd. (a).)

Both the GCA's text and extrinsic evidence of the Legislature's intent therefore show that the phrase "claims for money or damages," as used in the GCA (§ 905), encompasses any prelawsuit demand asserting a right to monetary

compensation for an alleged unlawful act or omission. The
refund request required by the Ordinance plainly falls within
this definition. After paying the tax, the taxpayer must submit
the written refund request to the City's finance director, and the
taxpayer must do so within one year of paying the tax to be
refunded. (Mun. Code, § 63515.) Such a request for a tax refund
is a demand asserting a right to monetary compensation for an
unlawful act or omission, i.e., a type of claim for money or
damages. Indeed, at the time the Legislature enacted the GCA,
it was well understood that a taxpayer could assert a cause of
action to recover an allegedly unlawful tax paid under protest.
(See *Northrop Aircraft v. Cal. Emp. Com.* (1948) 32 Cal.2d 872,
881–882; *Flynn v. San Francisco* (1941) 18 Cal.2d 210, 216;
*Vitale v. City of Los Angeles* (1936) 13 Cal.App.2d 704, 707.)

The City's contention that its refund procedures do not
encompass a claim for purposes of the GCA is also inconsistent
with our decisions in *Volkswagen Pacific*, *supra*, 7 Cal.3d 48 and
*McWilliams*, *supra*, 56 Cal.4th 613. As discussed, in
*Volkswagen Pacific*, the plaintiff sued a city to recover the
payment of a business license tax. (*Id.* at p. 51.) Because we
determined that the plaintiff's claim was a "claim for money in
the form of a tax refund" (*id.* at p. 61), we held the GCA's
deadline for a local government entity to act on a claim applied,
rather than the deadline established by the city's charter. (See
*Volkswagen Pacific*, at p. 62, fn. 7.) Under the City's reasoning
in this case, the city in *Volkswagen Pacific* could have first
required the taxpayer — before filing a claim under the GCA —
to file a refund claim pursuant to the procedures established in
its charter (including the extended time for the city to make a

decision). Our contrary holding in *Volkswagen Pacific* forecloses the City's position. (*Volkswagen Pacific*, at p. 62 & fn. 7.)

In *McWilliams*, we similarly held that claims for tax refunds against local government entities are governed by the GCA and are therefore necessarily claims for money or damages. There, the plaintiff sought a refund of the city's telephone users tax on behalf of himself and other residents. The city had enacted a local ordinance governing tax refunds, which barred class claims. (*McWilliams*, *supra*, 56 Cal.4th at pp. 619–620 & fns. 3, 4.) The city contended the tax refund claim was excepted from the GCA's requirements under section 905, subdivision (a), which covers clams "under the Revenue and Taxation Code or other statute prescribing procedures for the refund, rebate, exemption, cancellation, amendment, modification, or adjustment of any tax, assessment, [or] fee." (See *McWilliams*, at pp. 619–620.) We held in *McWilliams* that a local ordinance does not constitute a "[s]tatute" for purposes of the exception. (See *id*. at pp. 619–629; § 811.8 [defining a " '[s]tatute,' " for purposes of the GCA, as "an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act"].) The GCA's procedures therefore applied, and the local ordinance's bar on class claims could not be enforced. (*McWilliams*, at pp. 628–629.) While the City seeks to minimize the relevance of *McWilliams*, our holding necessarily implied that a request for a local tax refund is a claim for money or damages for purposes of the GCA, and a local government's own procedural requirements for how persons bring such claims are preempted. Like *Volkswagen Pacific*, *McWilliams* cannot be squared with the City's position that its refund procedures do not involve a claim.

Having concluded (1) that the GCA preempts the field of presentation requirements for money or damages claims, and (2) that the City's required refund requests constitute claims for money or damages, the only remaining question for purposes of the field preemption analysis is whether the City's administrative refund procedures impose additional requirements or otherwise fall within the field occupied by the GCA. The answer is yes. The GCA establishes a straightforward presentation process: the taxpayer presents a claim for money or damages, i.e., a request for a tax refund, with the "clerk, secretary, or auditor" of the local government entity, which is deemed presented if actually received by the government entity's board or any of the aforementioned individuals. (§ 915, subd. (a).) The government entity then has 45 days to rule on the claim before it is deemed denied and the taxpayer may bring a lawsuit against the entity on the cause of action alleged in the claim. (§ 911.6.) By contrast, the Ordinance requires a taxpayer who wishes to present a refund request to (1) file the request with the City's finance director (Mun. Code, § 63515); (2) if unsuccessful, file a written appeal of any adverse decision to the city manager that includes a description of the "matter being appealed" (*id*., § 63523, subd. A.2.) and a "statement of the grounds of appeal" (*id*., § 63523, subd. A.3.); and (3) if unsuccessful again, file a petition for writ of administrative mandate in a superior court (*id*., § 63523, subd. C., see Code Civ. Proc., § 1094.5) — all in addition to the GCA's own procedures. This multistep process plainly imposes requirements that exceed those of the GCA.

Moreover, the Ordinance provides no deadline for the finance director to issue the initial decision, and the city

manager has up to 60 days to rule on the appeal. Thus, the Ordinance allows for a longer period between the claimant's filing of the claim and date the claimant may bring a legal action. Because the Ordinance seeks to impose additional requirements and regulations in the field occupied by the GCA, it is preempted.

The City argues that exhaustion of its refund procedures and appeal is a "prerequisite" to a claim under the GCA, rather than a claim itself. This argument is unpersuasive. As discussed, a claim for money or damages, for purposes of the GCA, is an assertion of a legal right to monetary compensation. The taxpayer presents the claim to the public entity once a cause of action accrues in the conventional fashion — that is, once it accrues without regard to whatever procedural presentation requirements the local government entity seeks to impose. After a taxpayer pays a disputed tax, its legal right to recovery accrues in the usual fashion. The assertion of that right to the City, whether through an administrative refund procedure and subsequent appeal, or otherwise, is a claim. (See *McWilliams*, *supra*, 56 Cal.4th at pp. 628–629.)

The City and amici curiae California State Association of Counties and League of California Cities attempt to recast the Ordinance's refund procedure as providing an administrative remedy, rather than allowing for a claim, to avoid the preemptive effect of the GCA. According to amici curiae, the requirement to exhaust administrative remedies is a "judicially developed" doctrine of procedure that "operates as a structural component of the judicial process," independent of "whichever legislative body enacted the administrative procedures in question." Thus, amici curiae contend, the requirement to

exhaust administrative remedies "is entirely outside the 'field' addressed by the GCA."

This argument misunderstands the nature of the administrative exhaustion doctrine. The doctrine generally requires a party to seek relief though available administrative review procedures before resorting to courts. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1151.) It is "grounded on policy concerns related to administrative autonomy and judicial efficiency." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 383.) However, the doctrine says nothing about the *validity* of a local government's administrative review procedures, or whether those procedures might be preempted by conflicting state law. Here, the Ordinance requires a taxpayer to file a refund request — a type of claim for money or damages — pursuant to the procedures established in sections 63515 and 63523 of the Municipal Code. It is these distinct procedural requirements that the GCA preempts. Because they are preempted, the exhaustion doctrine cannot operate to require a taxpayer to adhere to such procedural requirements before seeking relief in the courts.

Moreover, we have recognized that a party is not necessarily required to exhaust an administrative remedy where a separate prelawsuit procedure fulfills identical purposes. (See *City of Los Angeles v. Superior Court* (1973) 8 Cal.3d 723, 729–732 [police officer discharged following an administrative hearing was not required to file request for reinstatement with separate administrative body]; *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal. 3d 247, 267–268 [named representative in class action was not required to

exhaust administrative remedy where unnamed class members had unsuccessfully sought administrative relief].)  The GCA's requirement that a person first present a claim for consideration before bringing suit, and the Ordinance's requirement that a taxpayer first file a refund request, serve largely the same purposes, and in a similar fashion.  The "core purposes" of the GCA's presentation requirements are to " 'give the governmental entity an opportunity to settle just claims before suit is brought[, and to] permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim.' " (*Arntz Builders v. City of Berkeley* (2008) 166 Cal.App.4th 276, 289.) The refund procedures established in the Ordinance offer the City the same opportunity to make an investigation, correct its practices, and settle a taxpayer's claims before the taxpayer may bring the City to court.  The City fails to offer any legitimate rationale for its position that a taxpayer should be required to both exhaust the three-step refund procedure established in the Ordinance — filing a request, appeal, and writ petition — before *then* filing an additional claim in accordance with the provisions of the GCA.  Affording the City *two* opportunities to conduct the same investigation and make the same determination before the taxpayer may file suit in court "would serve no additional useful purpose." (*Friends of Mammoth*, at p. 268.)

In short, the City's characterization of the Ordinance's refund procedures as an administrative remedy or "prerequisite" to a claim does not affect what they are for purposes of our field preemption analysis.  The relevant inquiry is not how the City characterizes its procedures, but what field

of regulations the Legislature intended to occupy, and whether
the procedures fall within that field.  Because the City's required
refund request is a "claim[] for money or damages" within the
meaning of the GCA (§ 905), and because the City seeks to
impose its own requirements for presenting such claims, the
City's refund procedures are preempted and a taxpayer is not
required to comply with such procedures before bringing a
lawsuit.  Indeed, if local public entities were allowed to impose
additional procedural requirements on claimants in the form of
claim "prerequisites," or if the exhaustion doctrine required a
claimant to comply with any claims process the local
government entity sought to impose, it would resurrect exactly
the patchwork of unique local procedural requirements the GCA
was intended to displace.

*Sipple v. City of Hayward* (2014) 225 Cal.App.4th 349
supports this analysis.  In *Sipple*, an Internet service provider
filed claims with several cities and counties, on behalf of its
subscribers, for refunds of access taxes which the service
provider had charged and collected from its customers and
remitted to the cities and counties.  (*Id.* at pp. 353–354.)  The
cities and counties argued that the service provider failed to
comply with the tax refund procedures established in the cities'
and counties' local ordinances, which required the providers to
first refund the disputed taxes to customers before filing refund
claims.  (*Id.* at p. 357.)  The Court of Appeal held that the
provider was not required to comply with these local ordinances.
(*Id.* at pp. 357–358.)  It reasoned that, "[t]o the extent that the[]
'refund first' ordinances establish a precondition to filing a
claim, they are preempted by the Government Claims Act."  (*Id.*
at p. 357.)  Just as the cities and counties in *Sipple* could not

require the service provider to refund customers as a
"precondition" to bringing a claim for a tax refund under the
GCA (*Sipple*, at p. 357), the City may not require a taxpayer to
exhaust its additional refund procedures as a "prerequisite" to
bringing a claim.

The City and amici curiae also argue that a local public
entity's adoption of administrative claims requirements can be
beneficial, as shown by the purposes underlying the exhaustion
doctrine. Requiring parties to first exhaust available
administrative remedies eases the burden on courts by allowing
an administrative agency to sift the relevant evidence, facilitate
the development of a complete record that draws on the agency's
expertise, and provide a remedy at the administrative level if
appropriate. (See *Center for Biological Diversity v. Department
of Fish & Wildlife* (2015) 62 Cal.4th 204, 239; *Tomlinson v.
County of Alameda* (2012) 54 Cal.4th 281, 291.) But whatever
the merits of additional local administrative procedures, the
Legislature by enacting the GCA plainly intended to preempt
them for several types of money and damage claims, including
the one at issue here.

Indeed, sections 905 and 935 reflect the Legislature's view
that local governments should be permitted to enact unique,
prelawsuit administrative review procedures for certain types of
damages claims, but not for the tax refund claims at issue here.
As discussed, section 935, subdivision (a) states that, for those
claims excepted by section 905, "the procedure prescribed in any
charter, ordinance, or regulation adopted by the local public
entity" shall govern where no other state statute or regulation
governs the claim. In its recommendation to the Legislature,
the Law Revision Commission explained that the objectives

supporting a uniform presentation procedure did not apply to the claims excepted by section 905; instead, the "claims procedure should be closely and directly integrated into [the] substantive policies" of the claim. (1959 Law Revision Com. Rep., *supra*, at p. A-117.) As we have recognized, the Legislature specifically declined to except claims for local tax refunds not governed by a state statute. (See *McWilliams*, *supra*, 56 Cal.4th at p. 623 ["the legislative history does not support the City's contention that the Legislature intended to preserve plenary control by local governments over the procedures for local tax refunds"].) To the extent the Legislature determines local governments should have greater discretion over the review procedures governing certain types of claims, the Legislature has the authority to create additional exceptions under section 905. But we cannot substitute our judgment for that of the Legislature in this regard.[3]

The City relies on several lower court opinions that it contends reflect the broad principle that the GCA does not preempt local administrative remedies. (See *Cornejo v. Lightbourne* (2013) 220 Cal.App.4th 932; *Richards, supra*, 139 Cal.App.4th 304; *Parthemore v. Col* (2013) 221 Cal.App.4th 1372; *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139; *Bozaich v. State of California* (1973)

---

[3] Our decision does not impact refund procedures for property taxes, sales and use taxes, and other "local" taxes that are prescribed by the Revenue and Taxation Code or other state statute. (Gov. Code, § 905.) Nor does our decision impact the general requirement that a party exhaust available, nonduplicative administrative remedies for claims other than "claims for money or damages against local public entities." (*Ibid*.)

32 Cal.App.3d 688.)   Each of these cases is distinguishable.
None addressed a local ordinance that imposed mandatory
administrative procedures for requesting a tax refund or
otherwise presenting a claim for money or damages.  *Richards*
considered whether compliance with the GCA excuses the
requirement to exhaust an administrative remedy established
by the *Legislature* as part of a *statewide* statutory scheme
(*Richards*, at pp. 313–316), while *Cornejo* conversely considered
whether compliance with a similar state administrative review
process excused compliance with the GCA (*Cornejo*, at pp. 938–
942).  *Lozada*, *Parthemore*, and *Bozaich* each involved a plaintiff
who failed to comply with the GCA altogether, and each
considered whether the GCA and the administrative procedures
at issue were sufficiently analogous such that a party's excusal
from compliance with one necessarily excused compliance with
the other.  (*Parthemore*, at pp. 1381–1384; *Lozada*, at pp. 1153–
1159; *Bozaich*, at pp. 697–699.)  None of these cases addressed
the dispositive question here:  whether a local public entity may
impose additional procedural requirements on a plaintiff
seeking to present a claim for money or damages.

The City and amici curiae also cite several cases in which
a plaintiff was required to exhaust local administrative
remedies before filing a lawsuit, including local administrative
procedures for challenging a tax.  (See *Los Globos Corp. v. City
of Los Angeles* (2017) 17 Cal.App.5th 627; *Flying Dutchman
Park, Inc. v. City and County of San Francisco* (2001)
93 Cal.App.4th 1129; *Park 'N Fly of San Francisco, Inc. v. City
of South San Francisco* (1987) 188 Cal.App.3d 1201.)  However,
none of these cases considered the effect of the GCA on the
administrative review procedures at issue.  While the plaintiffs

in *Park 'N Fly* and *Flying Dutchman* brought challenges to local
tax assessments, neither sought the recovery of taxes paid or
otherwise asserted a cause of action seeking recovery of money
or damages. Thus, the GCA did not apply. (See *Park 'N Fly*, at
pp. 1206–1207; *Flying Dutchman*, at pp. 1132–1133.) *Los
Globos* involved local review procedures enabling the plaintiff to
challenge only the city's permit determinations. (*Los Globos*, at
pp. 633–634.) Unlike the Ordinance here, the applicable local
laws did not require the plaintiff to follow distinct procedures
for filing claims for money or damages. (*Ibid.*) *Los Globos* also
did not meaningfully address the GCA. It only mentioned in
passing that the defendant argued in the trial court that the
plaintiff failed to comply with the statute in addition to failing
to exhaust administrative remedies. (*Los Globos*, at p. 631.)
None of these cases supports the City's and amici curiae's
contention that the GCA does not preempt local administrative
remedies involving money or damages claims.

Finally, the City invokes the home rule provision of
article XI, section 5 of the California Constitution to support its
contention that the GCA does not preempt the tax refund
procedures established in the Ordinance. The home rule
provision generally affirms a charter city's power to regulate its
municipal affairs, including the power to raise revenue via
taxation. (*City and County of San Francisco v. Regents of
University of California* (2019) 7 Cal.5th 536, 544–545.)
However, as discussed, the Legislature adopted and the voters
approved a constitutional amendment to confirm that claims
presentation procedures enacted by the Legislature —
specifically those in the GCA — would apply to chartered cities.
(1959 Law Revision Com. Rep., *supra*, at p. A-9; see Cal. Const.,

art. XI, former § 10, as adopted Nov. 8, 1960, now art. XI, § 12.)
As we explained in *McWilliams*, article XI, section 12 makes
clear that "the home rule protections in the Constitution do not
limit the Legislature's authority to prescribe procedures
governing claims against chartered local government entities."
(*McWilliams*, *supra*, 56 Cal.4th at p. 627.)

Ultimately, the City's position that it can enact its own tax
refund procedures is fundamentally at odds with the
Legislature's stated purpose in enacting the GCA's claims
presentation requirements. The Legislature sought to remedy
the fact that persons with valid claims had "unjustly" lost their
rights by failing to comply with the distinct requirements
imposed by local government entities in their claims statutes.
(Assem. Conc. Res. No. 12, Stats. 1956, *supra*, res. ch. 35, at
p. 257; see *Minsky*, *supra*, 11 Cal.3d at p. 120 ["As noted by
many commentators, these diverse claims presentation
requirements often created unnecessary 'traps for the
unwary'"]; *Viles v. State of California* (1967) 66 Cal.2d 24, 31
["'Both the courts and Legislature have recognized that the
labyrinth of claims statutes previously scattered throughout our
statutes were traps for the unwary. [Citations.] An attempt has
been made by the Legislature to remove such snares'"].)
Requiring a person with a valid tax refund claim to both file a
claim under the GCA, *and* comply with a separate
administrative refund procedure, creates precisely the type of
procedural trap the GCA was intended to eliminate. Permitting
a government entity to enforce such a requirement would
frustrate the Legislature's intended goal in enacting a "uniform"

procedure for the presentation of claims for money or damages.
(Assem. Conc. Res. No. 12, at p. 257.)[4]

## III. DISPOSITION

The GCA preempts the field of presentation requirements
for claims for money or damages against local public entities,
including claims for a local tax refund. Because sections 63515
and 63523 of the Municipal Code impose additional
requirements on a taxpayer seeking to present a postpayment
claim for a local tax refund, they are preempted. A taxpayer is
not required to comply with such requirements before filing a
claim under the GCA or seeking relief in court. The judgment
of the Court of Appeal is reversed, with directions to reverse the

---

[4] The City raises the possibility that Tesoro could have filed
an appeal of the notice of deficiency directly with the city
manager under section 63523 of the Municipal Code *before*
paying the contested tax and seeking a refund. To the extent
the City is arguing that a prepayment appeal of the notice of
deficiency was an additional administrative remedy that Tesoro
was required to exhaust, we decline to consider this argument.
In its briefing in the trial court, Tesoro argued that the text and
structure of the Ordinance did not require it to file an appeal
with the city manager until the finance director first made a
determination on a refund request. In reply, the City confirmed
this understanding of the Ordinance's requirements and
disclaimed any argument to the contrary. Neither the trial
court nor the Court of Appeal considered the possibility that
Tesoro could or should have sought administrative review of the
notice of deficiency before paying the contested tax, and we
decline to do so for the first time here. Our preemption holding
is limited to local, mandatory procedures governing how
taxpayers may seek a postpayment tax refund, like those set
forth in Municipal Code sections 63515 and 63523 (at least
insofar as Mun. Code, § 63523 governs appeals from the City's
refund decisions).

judgment in favor of the City following the order sustaining the
demurrer, and to instruct the trial court to enter a new order
overruling the City's demurrer.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**GROVER, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Sixth Appellate
District, assigned by the Chief Justice pursuant to article VI,
section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Tesoro Refining & Marketing Company LLC v. City of Carson

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 2/28/25 – 2d Dist., Div. 4
**Rehearing Granted**

---

**Opinion No.** S289952
**Date Filed:** August 10, 2026

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Holly J. Fujie

---

**Counsel:**

Nielsen Merksamer, Nielsen Merksamer Parrinello Gross & Leoni, Christopher E. Skinnell, David J. Lazarus; Capitol Law & Policy and Eric J. Miethke for Plaintiffs and Appellants.

Jonathan M. Coupal, Timothy A. Bittle and Amy C. Sparrow for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

LevatoLaw, Ronald C. Cohen; Downey Brand, Dale A. Stern; and Sophie Ellinghouse for the California Business Roundtable, the California Manufacturing and Technology Association and the Western States Petroleum Association as Amici Curiae on behalf of Plaintiffs and Appellants.

Aleshire & Wynder, Sunny K. Soltani, William W. Wynder, Alison S. Flowers and Shukan A. Patel for Defendant and Respondent.

Rural County Representatives of California, Arthur J. Wylene and Taylor W. Kayatta for the California State Association of Counties and the League of California Cities as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Christopher E. Skinnell
Nielsen Merksamer, LLP
2350 Kerner Boulevard, Suite 250
San Rafael, CA 94901
(415) 389-6800

William W. Wynder
Aleshire & Wynder, LLP
1 Park Plaza, Suite 1000
Irvine, CA 92614
(949) 223-1170

Arthur J. Wylene
Rural County Representatives of California
1215 K Street, Suite 1650
Sacramento, CA 95814
(916) 447-4806